IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


KENNETH C. ANDERSON,
       Petitioner,

vs.                                       Case No. 3:07cv469/RV/EMT

WALTER A. McNEIL,
       Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a motion to dismiss Grounds One through Five of the petition (Doc. 9). Respondent also submitted relevant portions of the state court record (*id.*, Attachments). Petitioner did not oppose dismissal of Grounds One through Five (Doc. 13). On August 1, 2008, the district court, adopting the report and recommendation of the undersigned, granted Respondent's motion to dismiss, dismissed Grounds One through Five of the habeas petition, and referred the matter to the undersigned for further proceedings on Ground Six (Doc. 24).

After careful consideration of the issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter.[1] It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

---

[1] The "decision to grant an evidentiary hearing [is] generally left to the sound discretion of district courts." Schriro v. Landrigan, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007); *see* 28 U.S.C. § 2254(e)(2); Rules Governing Section 2254 Cases 8(a) ("[T]he judge must review the answer [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted."). A district court should hold a hearing if there are disputed facts concerning the petitioner's habeas claim, and the petitioner did not receive a full and fair state court hearing, either at trial or in a collateral proceeding. Boyd v. Allen, 592 F.3d 1274, 1304 (11th Cir. 2010) (citations omitted). A petitioner is not entitled to an evidentiary hearing when his claims are merely "conclusory allegations unsupported by specifics." Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

I.      BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in the Circuit Court in and for Okaloosa County, Florida, with two counts of sexual battery on a victim less than twelve (12) years of age and three counts of lewd and lascivious assault upon a child (Doc. 9, Ex. D).  Following a jury trial, Petitioner was convicted of two counts of sexual battery on a victim less than twelve (12) years of age and two counts of lewd and lascivious assault upon a child (Doc. 1 at 1–2).  On August 17, 1999, he was sentenced to concurrent terms of life imprisonment on the sexual battery counts, a term of fifteen (15) years of imprisonment on one of the lewd and lascivious assault counts, to run consecutively to the life terms, and a term of fifteen (15) years of imprisonment on the other the lewd and lascivious assault count, to run concurrently with the other 15-year term (Doc. 9, Ex. E).[2]  Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA").  On September 29, 2000, the First DCA affirmed the judgment per curiam without written opinion, with the  mandate issuing October 17, 2000 (Exs. G, H).  Anderson v. State, 770 So. 2d 680 (Fla. 1st DCA 2000) (Table).

In September of 2001, Petitioner filed a petition for writ of habeas corpus in the First DCA alleging ineffective assistance of appellate counsel (Ex. J).  The First DCA denied the petition on February 4, 2002, and denied Petitioner's motion for rehearing on March 14, 2002 (Exs. K, M).  Anderson v. State, 812 So. 2d 404 (Fla. 1st DCA 2002) (Table).

On October 5, 2001, while Petitioner's state habeas petition was pending, Petitioner filed a motion for post-conviction relief in the trial court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. N).  The trial court summarily denied the motion (Ex. O).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion, with the mandate issuing March 11, 2004 (Exs. R, S, T).  Anderson v. State, 866 So. 2d 1213 (Fla. 1st DCA 2003) (Table).

Petitioner filed a federal habeas petition with this court on March 1, 2004, which was dismissed at Petitioner's request on June 7, 2006 (Exs. U, V, W, X, Y).

On May 18, 2006, Petitioner filed a second Rule 3.850 motion requesting a new trial based upon newly discovered evidence, specifically, an affidavit of Jesse Aull, Petitioner's son, purportedly recanting his trial testimony and alleging that his testimony was coerced by his mother and the prosecutor, in violation of Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (Ex. Z at 1–17).  The trial court summarily denied the motion (id. at 24–200).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written

---

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's motion to dismiss (Doc. 9).

opinion, with the mandate issuing November 8, 2007 (Exs. AA, BB). <u>Anderson v. State</u>, 967 So. 2d 199 (Fla. 1st DCA 2007) (Table).

Petitioner filed the instant federal habeas action on October 29, 2007 (Doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neeley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether

its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.[4]

---

[4] As previously noted, Grounds One through Five of the instant federal petition were previously dismissed; therefore, only Ground Six remains for review.

III.    PETITIONER'S CLAIM

WHETHER THE PETITIONER'S RIGHT TO DUE PROCESS, GUARANTEED UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, WAS DEPRIVED WHEN THE TRIAL COURT SUMMARILY DENIED HIS ARTICULATED CLAIMS OF NEWLY DISCOVERED EVIDENCE AND PROSECUTORIAL MISCONDUCT?

Petitioner states he filed a motion for post-conviction relief in the trial court based upon newly discovered evidence that Jesse Aull, a witness for the State at Petitioner's trial and a minor at the time of his testimony, recanted his trial testimony and alleged that the prosecutor supplied false testimony to Aull and permitted him to testify falsely (Doc. 1 at 25–26).  Petitioner states he submitted Mr. Aull's affidavit with his post-conviction motion, thus presenting a valid Giglio claim to the state court (id. at 25–27).  Petitioner contends the trial court violated clearly established Supreme Court law by summarily denying the motion (id. at 26).

The state court record shows that Petitioner presented this claim in his second Rule 3.850 motion (Ex. Z at 1–17).  Applying Jones v. State, 591 So. 2d 911, 915 (Fla. 1991), in which the Florida Supreme Court held that in order to provide post-conviction relief on the ground of newly discovered evidence, such evidence must be of such nature that it would probably produce an acquittal on retrial, the state court denied Petitioner's request for a new trial (Ex. Z at 24–26).  The state court found that the allegations against Petitioner were established by the direct testimony from both child victims and the victims' statements to a member of the "child protection team," which were admissible under an exception to the hearsay rule (id. at 25–26).  The court further determined that although Jesse Aull's trial testimony corroborated some aspects of the allegations against Petitioner, it was not essential to the State's case because Aull did not testify that he actually witnessed any improper conduct (id. at 26).  The court attached excerpts of the trial transcript in support of its determinations (id. at 24–200).  Based upon these findings, the court concluded that Jesse Aull's recantation would not likely produce an acquittal on retrial; therefore, Petitioner was not entitled to a new trial (id. at 26).

The state court applied state law in adjudicating Petitioner's newly discovered evidence claim.  Furthermore, it does not appear that the state court applied federal law, let alone the governing law set forth in Giglio, to the claim that the prosecutor knowingly presented false testimony.  The undersigned, therefore, has doubt as to whether the state court applied the correct rule of governing federal law.  In light of this doubt, the court will not apply the deferential standard of review set forth in § 2254(d)(1) and instead will apply the pre-AEDPA standard, under which pure questions of law and mixed questions of law and fact are reviewed de novo, and any factual findings of the state courts that bear on the issue are presumed correct.  See Romine v. Head, 253 F.3d 1349, 1365 (11th Cir. 2001); see also Storey v. Roper, 603 F.3d 507, 518 (8th Cir. 2010);

Dolphy v. Mantello, 552 F.3d 236, 238 (2d Cir. 2009); Powell v. Quarterman, 536 F.3d 325, 343 (5th Cir. 2008); Cristini v. McKee, 526 F.3d 888, 897–98 (6th Cir. 2008); Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir. 2005); Lavallee v. Coplan, 374 F.3d 41, 43–44 (1st Cir. 2004); Everett v. Beard, 290 F.3d 500, 507–08 (3d Cir. 2002); Hudson v. Hunt, 235 F.3d 892, 895 (4th Cir. 2000); Hooks v. Ward, 184 F.3d 1206, 1223 (10th Cir. 1999).

It is well established that the knowing use of material false evidence by the state in a criminal prosecution violates due process. Giglio v. United States, 405 U.S. 150, 153, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104, 108 (1972); Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3 L. Ed. 2d 1217, 1221 (1959); Mooney v. Holohan, 294 U.S. 103, 112, 55 S. Ct. 340, 341–42, 79 L. Ed. 791, 794 (1935); Williams v. Griswald, 743 F.2d 1533, 1541 (5th Cir. 1984). This rule applies equally when the State, although not soliciting perjured testimony, allows it to go uncorrected after learning of its falsity. Giglio, 405 U.S. at 153; Napus, 360 U.S. at 269. In addition, "[i]t is of no consequence that the falsehood [bears] upon the witness' credibility rather than directly upon [the] defendant's guilt." Napue, 360 U.S. at 269 (quoting People v. Savvides, 1 N.Y.2d 554, 557, 136 N.E.2d 853, 854, 154 N.Y.S.2d 885, 887 (1956)); see Giglio, 405 U.S. at 154. "To obtain a reversal on the grounds that the government relied on perjured testimony, the following must be shown: (1) the contested statements were actually false, (2) the statements were material, and (3) the prosecution knew that they were false." United States v. Bailey, 123 F.3d 1381, 1396 (11th Cir. 1997).

In this case, Jesse Aull testified that Petitioner was his biological father, Terri Aull was his mother, and Shannon DeCann and Callie DeCann were his sisters (Ex. Z at 162). He testified that during the summer of 1995, he lived on Coral Drive in Fort Walton Beach with his mother, Petitioner, Shannon, and Callie (id. at 164). He testified that Shannon and Callie were eight years old at the time, and they never seemed to need help going to the bathroom unless they were sick (id. at 197–98). Aull testified that sometimes he, Shannon, and Callie went places with Petitioner when their mother was not home, for example, the motor cross track near Milton in Santa Rosa County (id. at 165). Aull identified photographs of the track and the interior of the men's restroom at the track (id. at 167). He also identified a photograph of a Food World grocery store and a Texaco gas station that were in close proximity to their house (id. at 168, 170). Aull testified that Petitioner took him, Shannon, and Callie places without their mother "a couple of times" (id. at 171). Aull testified that on one occasion when he and his sisters went shopping at Food World with Petitioner, Callie said she had to go to the bathroom, and Petitioner said he would take her (id. at 172). Aull testified that Petitioner and Callie took "longer than usual," and Callie looked "troubled" when she returned

(*id.* at 172, 176). He testified that he did not think it was unusual at the time, but later felt differently (*id.* at 172–73).

Aull testified that another unusual trip occurred when he, Shannon, Callie, and Petitioner stopped at the Texaco gas station (*id.* at 173). He testified that Petitioner told him to fill the tank while he (Petitioner) paid for the gas (*id.*). Aull testified that Callie went to the restroom when Petitioner went into the gas station to pay (*id.*). He testified that he finished pumping the gas and sat in the truck and waited for five minutes (*id.*). Then he stepped into the door of the gas station and did not see Callie or Petitioner, so he went back to the truck and waited another five minutes (*id.*). Aull testified that it took longer than usual for Callie to return from the bathroom (*id.* at 174).

Aull testified that Shannon and Callie seemed nervous and not at ease around Petitioner (*id.* at 174–75). He also testified that Petitioner often bought the sisters gifts, especially Callie, but he would not buy things for anyone else (*id.* at 175). Aull described the gift giving as excessive (*id.* at 176).

Aull also testified that in May of 1998, he rode to a video store with his mother, Shannon, and Callie (*id.* at 176–77). He testified that Shannon said something to their mother that made their mother look worried and distressed (*id.* at 177–78). He testified that Callie, who was sitting next to him, "had a lot of emotions on her face" and was trying to stop Shannon from talking (*id.* at 178). He testified that his mother questioned the girls about what they were talking about (*id.*). Aull testified that the investigation involving Petitioner began after this trip to the video store (*id.* at 179–80).

In Aull's affidavit, he states:

> I, Jesse William James Aull, hereby declare under penalties of perjury the following is true and correct. During the course of my fathers [sic] trial I was coerced into making false statements and testimonies [sic] against my father Kenneth Anderson. David Fleet the prosecutor in the case, and my mother, then Terri Aull, now Terri Finch, coerced me into testifying against my father with statements that they supplied me with, and of wich [sic] did not come from my memory. I was left uninformed of the situation, until the last minute, and was forced to reherce [sic] the statements I made in the trial. My mother then, Terri Aull, now Terri Finch, and David Fleet, the prosecutor, went over statements and dates until they where [sic] confident that i [sic] would perform on the stand to their satisfaction. My mother told me that my father Kenneth Anderson was guilty and anything I said to the contrary I was repremanded [sic] for. I was in a state of confusion at the time i [sic] testified against my father Kenneth Anderson, and did not fully grasp what was going on. At the time of the trial I was a minor and did not fully understand my responsibility to the law to only make true statements, instead of doing what my mother, and the prosecuter [sic] told me to say. After evaluating the events that transpired as an adult I can fully see now how I was manipulated into making false statements during the trial, and how my view on whether or not my father Kenneth Anderson was guilty or not was molded for me. After going over court transcripts

and remembering real, actual facts, I have come to the conclusion, for myself, that
I do not believe that my father Kenneth Anderson is guilty of the crime against him.

(Ex. Z at 17).

Assuming the truth of Aull's statements in his affidavit, Petitioner has not demonstrated any knowing use of materially false testimony by the State. Mr. Aull states the prosecutor supplied him with facts which he (Aull) did not independently recall, and after trial he remembered "real, actual" facts; however, Aull does not identify any particular testimony that was actually false. Furthermore, although Aull states the prosecutor "coerced" him into testifying falsely, he alleges no facts that support his conclusory claim of coercion, nor, again, does he identify any particular testimony that was false. Therefore, Aull's affidavit is insufficient to show a knowing use of materially false testimony by the prosecution. Petitioner has thus failed to demonstrate a <u>Giglio</u> violation.

Additionally, to the extent Petitioner argues he is entitled to federal habeas relief on a freestanding claim of actual innocence based upon newly discovered evidence, independent of his <u>Giglio</u> claim and not asserted in support of an exception to a procedural bar, his contention is without merit. In addressing a similar claim of actual innocence, the United States Supreme Court articulated the context in which such claims come before a federal habeas court:

A person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt. Other constitutional provisions also have the effect of ensuring against the risk of convicting an innocent person. . . . All of these constitutional safeguards, of course, make it more difficult for the State to rebut and finally overturn the presumption of innocence which attaches to every criminal defendant. But we have also observed that "[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." <u>Patterson v. New York</u>, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). To conclude otherwise would all but paralyze our system for enforcement of the criminal law.

Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.
. . . .
Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings. . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact.
. . . .
Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

Herrera v. Collins, 506 U.S. 390, 400, 113 S. Ct. 853, 860, 122 L. Ed. 2d 203 (1993) (citations omitted). Therefore, to the extent Petitioner asserts a claim of actual innocence independent of the alleged Giglio error, he has failed to state a cognizable claim.

Finally, to the extent Petitioner claims a due process violation based upon the state post-conviction court's summarily denying his claim without an evidentiary hearing, he is not entitled to relief. It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings. This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *See* Quince v. Crosby, 360 F.3d 1259, 1261–62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief"). In the instant case, the state collateral proceeding where this alleged due process violation occurred was not part of the direct review process of Petitioner's conviction, rather, Petitioner's direct appeal to the First DCA in Anderson v. State, 770 So. 2d 680 (Fla. 1st DCA 2000) was the direct review proceeding. Therefore, to the extent Petitioner's due process claim challenges only the process afforded him in a state collateral review proceeding and does not present a constitutional challenge to Petitioner's confinement, it does not provide a basis for federal habeas relief.

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 26th day of July 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**